UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEON MOORE,
    Petitioner,
v.

UNITED STATES OF AMERICA,
    Respondent.
_____

Case No. 8:25-cv-488-TPB-AAS
Case No. 8:20-cr-180-TPB-AAS

## ORDER DENYING MOTION TO VACATE SENTENCE

Keon Moore moves under 28 U.S.C. § 2255 to vacate his convictions and 210-month sentence for being a felon in possession of a firearm and ammunition and possession with intent to distribute controlled substances. He raises constitutional challenges to his convictions and claims he received ineffective assistance of counsel. He is entitled to no relief.

**I.    Background**

The charges against Moore arise from his rental of a 50 square-foot storage unit in Brandon, Florida. (Crim. Doc. 155 at 181, 187–91, 198, 218; Crim. Doc. 132-1) To rent the unit, Moore signed a rental agreement, provided personal identifying information, and paid rental fees. (*Id.*) Moore visited the rental unit frequently. (Crim. Doc. 155 at 199–201, 207, 237, 255)

One day, when the facility manager was conducting a routine unit audit, she encountered a man and a boy inside Moore's unit. (Crim. Doc. 155 at 217, 241) She also observed the unit was relatively empty but noticed some small

boxes and a gun bag. (Crim. Doc. 155 at 218–20, 223–27) Moore was at the facility, sitting in his car in the parking lot about 20 feet from his unit, when the facility manager made this discovery. (Crim. Doc. 155 at 213–15; Crim. Doc. 156 at 36–37) When the manager asked the man, who was later identified as Kevin Ross, what he was doing there, he said, "I'm using my unit." (Crim. Doc. 155 at 219) Ross and the boy left the storage facility in Moore's vehicle. (*Id.* at 220–22, 229–30)

The manager contacted law enforcement who returned to the storage facility with a drug-detection dog. (Crim. Doc. 156 at 53) The dog alerted to the presence of drugs as soon as it reached Moore's unit. (*Id.* at 56–57) Law enforcement obtained a search warrant. (Crim. Doc. 155 at 230–31; Crim. Doc. 156 at 57–58) When they searched Moore's unit, they found a backpack, narcotics, and a gun case with two rifles. (Crim. Doc. 156 at 61–67, 70–72)

A grand jury returned a superseding indictment that charged Moore with possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One); possession with the intent to distribute methamphetamine, cocaine, cocaine base, fentanyl, eutylone, morphine, and marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), and (b)(1)(C) (Count Two); and possession of a firearm in furtherance of the drug-trafficking crime charged in Count Two, in violation of 18 U.S.C. § 924(c) (Count Three). (Crim. Doc. 82) Moore stipulated that he knew he was a

convicted felon and that he could not lawfully possess firearms or ammunition. (Crim. Doc. 130-1 at 1) After a three-day trial, a jury found Moore guilty of Counts One and Two and acquitted him of Count Three. (Crim. Doc. 128)

The presentence report calculated an advisory guidelines range of 210 to 262 months based on Moore's total offense level of 32 and his criminal history category of VI. (Crim. Doc. 138 at ¶¶ 32, 56, 96) Moore requested a downward variance based in part on his disadvantaged childhood. (Crim. Doc. 146) The district court imposed a 210-month sentence, which consists of concurrent sentences of 120 months for Count One and 210 months for Count Two. (Crim. Doc. 148)

On appeal, Moore argued that the district court abused its discretion when it allowed the United States to introduce social media posts at trial and when it denied a motion for mistrial. *See United States v. Moore*, No. 22-11105, 2022 WL 17090643 (11th Cir. Nov. 14, 2022). The circuit court rejected Moore's arguments and affirmed his convictions. *See United States v. Moore*, No. 22-11105, 2024 WL 416475 (11th Cir. Feb. 5, 2024).

Now, Moore claims he was denied due process because the United States failed to prove his geographical location and because possession of a firearm is a state offense (Grounds One and Three), the district court lacked Article III standing (Ground Two), and counsel rendered constitutionally ineffective

assistance by failing to obtain a plea offer (Ground Four). He seeks a sentence reduction. (Civ. Doc. 8 at 8–9)

## II. Discussion

### A. Grounds One and Three

Moore vaguely argues he was denied due process because the United States failed to "prove[] geographical location" and that possession of a firearm is a state offense. (Civ. Doc. 1 at 4 and 7) The district court generously construes these arguments as a challenge to the constitutionality of § 922(g)(1) and a challenge to the sufficiency of the evidence supporting the offense charged in Count One. The United States responds that Moore's claims are procedurally defaulted and meritless.[1]

Moore's challenge to the constitutionality of § 922(g)(1) lacks merit. The circuit court has repeatedly upheld the constitutionality of § 922(g)(1). *See United States v. Williams*, No. 23-13858, 2025 WL 2303513, at *3 (11th Cir. Aug. 11, 2025) (summarizing circuit precedent upholding the constitutionality of § 922(g)(1)'s prohibition on felons possessing firearms and reaffirming that "the Second Amendment permits a permanent ban on [a defendant's] firearm

---

[1] The United States correctly argues that Moore procedurally defaulted these claims by neglecting to raise them on direct appeal. (Civ. Doc. 3 at 9–11) For judicial economy, the district court rejects these claims as meritless. *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("As we have said many times and as the Supreme Court has held, a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

possession"). And, he fails to recognize that the same conduct can violate both state and federal law. Florida Statute § 790.23(1)(a) makes it "unlawful for any person to own or have in his or her care, custody, possession, or control any firearm, [or] ammunition . . . if that person has been . . . [c]onvicted of a felony in the courts of this state." *Id*. Similarly, § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm.

Moore's challenge to the sufficiency of the evidence supporting the felon-in-possession offense charged in Count One similarly lacks merit. To prove a violation of § 922(g)(1), the United States must prove that a defendant knowingly possessed a firearm in or affecting interstate or foreign commerce and that the defendant knew he was a convicted felon. *Rehaif v. United States*, 588 U.S. 225, 227 (2019). The United States "need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence." *See United States v. Green*, 873 F.3d 846, 852 (11th Cir. 2017). "[I]f the defendant 'exercised some measure of dominion or control over the contraband, either exclusively or in association with others, he constructively possessed it.'" *United States v. Gilmore*, No. 23-12062, 2025 WL 881449, at *6 (11th Cir. Mar. 21, 2025) (quoting *United States v. Battle*, 892 F.2d 992, 999 (11th Cir. 1990)).

Moore stipulated that he was a convicted felon before the date of the conduct charged in the superseding indictment, that he knew he was a convicted felon, and that he knew he could not lawfully possess firearms or ammunition. (Crim. Doc. 130-1 at 1) He stipulated that the firearms and ammunition traveled in interstate or foreign commerce before seizure by law enforcement. (*Id*. at 5–6)

At trial, the United States presented sufficient evidence that Moore knowingly possessed the firearms and ammunition found in his storage unit. Facility records show that Moore rented the storage unit on January 20, 2020. (Crim. Doc. 132-1) He provided his name, address, phone number, and email address, and signed the rental agreement form. (*Id*.) Video surveillance showed him completing the rental agreement forms and paying to rent the unit. (Crim. Doc. 155 at 198–203). Facility keypad log records established that Moore accessed the unit frequently between January 20, 2020, and February 11, 2020. (Crim. Doc. 132-3) Cell site records show that his cell phone was physically located near the facility during the times that corresponded with the keypad log access records. (Crim. Doc. 132-26) When the manager contacted Moore to alert him that the contents of his unit would be destroyed if he did not claim them, Moore responded immediately, drove directly to the facility, and possessed the key to the padlock on the storage unit. (Crim. Doc. 155 at 234–36) Law enforcement discovered Moore's DNA on the do-rag found in the

same bag as the two guns. (Crim. Doc. 156 at 162–64) Consequently, sufficient evidence supports Moore's § 922(g)(1) conviction.

### B. Ground Two

Moore claims that the district court lacks Article III standing and vaguely refers to an unexplained "conflict of interest." (Civ. Doc. 1 at 5–6) Although he had an opportunity to elaborate this claim in his reply brief, Moore neglected to do so.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, a *pro se* petitioner must "adequately present [his] claim in his § 2255 motion such that the district court could not misunderstand it." *Burke v. United States*, No. 21-14152, 2023 WL 6120312, at *1 n.3 (11th Cir. Sept. 19, 2023) (citing B*arritt v. Sec'y, Fla. Dep't of Corr.*, 968 F.3d 1246, 1251 (11th Cir. 2020) ("[C]aims for relief must be clearly presented to the district court.")).

Moore's assertion that the district court lacks Article III standing lacks merit. The superseding indictment charges him with violations of federal law, and an indictment that charges a federal crime establishes the district court's jurisdiction. *See Alikhani v. United States*, 200 F.3d 732, 734–35 (11th Cir. 2000).

Moore's claim that an unidentified conflict of interest invalidates his convictions is subject to summary dismissal because he neglects to support this assertion with any details or elaboration. *See Presendieu v. United States*, No. 21-12552, 2022 WL 41151447, at *5 (11th Cir. 2022) (quoting *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (disavowing relief when a petitioner's claims are merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible")).

### C. Ground Four

Moore claims counsel "never tried to get a plea deal . . . so that I didn't have to go to trial." (Civ. Doc. 1 at 8)  In his reply, Moore elaborates:

> I advised Ms. King before the suppression hearing that I wanted to plea out.  She stated, "let's see how this motion goes."  And also stated on numerous occasions that the only way I could get a deal was to cooperate on my supplier and other gang members.  Same as Serbo.  And I told them that the gang is not that organized.  We only see each other's intake pictures.  If it was organized they would have already received a RICO from at least a state level.  I asked Serbo a dozen times to take the prosecutor the 15 year plea but he insisted that I would still get 23 years at least so they both used a very wise tactic to scare me out of open pleading or asking again.  By me not having any information for them I felt restricted to go to trial.

(Civ. Doc. 8 at 6, *modified for clarity*).

CJA-appointed counsel Vanessa King represented Moore from arraignment through the pretrial suppression hearing.  In her responsive

8

affidavit, Ms. King avers that she met with Moore at least fifteen times and specifically discussed a plea with him on at least four occasions. She avers that Moore was "adamant on taking his case to trial." (Civ. Doc. 3-1 at 2) She attaches her billing records and email correspondence that substantiate Moore's position that he wanted to proceed to trial after the district court denied his pretrial motion to suppress. (*Id.* at 12 and 14)

CJA-appointed counsel Serbo Simeoni represented Moore after Ms. King withdrew her representation, at trial, and on appeal. In his responsive affidavit, Mr. Simeoni avers that Moore "never expressed a desire to plead guilty to the charges and always maintained that he wanted to proceed to trial." (Civ. Doc. 3-2 at 3) In fact, according to Mr. Simeoni, Moore "became agitated if the possibility of a plea was discussed with him." (*Id.*)

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984). To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). A petitioner demonstrates prejudice only when he establishes "a reasonable

9

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

While "there is no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977), the Sixth Amendment's guarantee of effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). A criminal defense lawyer "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). A lawyer's failure to convey a plea agreement thus constitutes deficient performance under *Strickland*. *Id*. at 145, 147. However, it is within the government's discretion to plea bargain, and "counsel cannot force the [government] to plea bargain." *Zamora v. Dugger*, 834 F.2d 956, 960 (11th Cir. 1987) (concluding that counsel's failure to initiate plea bargaining did not constitute ineffective assistance of counsel). Furthermore, to establish prejudice in this context, the petitioner must allege facts that show "there is a reasonable probability that [(1)] the plea offer would have been presented to the court," (2) "the court would have accepted its terms," and (3) the sentence, under the offer's terms, "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Moore fails to show that counsel rendered deficient performance in failing to obtain a plea deal. Counsel cannot force the United States to offer a

10

plea deal, and Moore alleges no facts to suggest that a plea agreement existed that counsel failed to convey to him. *See Bilus v. United States*, No. 20-11585, 2021 WL 3523922, at *5 (11th Cir. Aug. 11, 2021) (affirming that counsel did not perform deficiently in failing to pursue a conditional guilty plea when the government made no plea offer and nothing in the record showed the government would have agreed to one).

Additionally, Moore cannot show he was prejudiced by counsel's performance because nothing in the record substantiates his "conclusory after-the-fact assertion" that he would have accepted a plea deal if one had been offered to him. *See Rosin v. United States*, 786 F.3d 873, 878–79 (11th Cir. 2015) (concluding that the record patently contradicted the petitioner's claim that he would have accepted a plea when the evidence showed he refused to accept responsibility during all stages of his criminal proceedings). Moore maintained his innocence at trial and on appeal. "Although not dispositive, . . . . a defendant's denial of guilt is a pertinent factor to consider in determining whether a defendant would have accepted a plea offer." *Polshyn v. United States*, No. 20-11844, 2021 WL 5904089, at *2 (11th Cir. Dec. 14, 2021) (citing *Osley v. United States*, 751 F.3d 1214, 1224–25 (concluding that petitioner established no prejudice in part because petitioner's "insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal")).

11

Moore's vague suggestion that he "felt restricted to go to trial" because he had no information to offer the United States, undermines his current claim. Moore's explanation of his decision to proceed to trial, as set forth in his reply, reaffirms that Moore voluntarily elected to proceed to trial—not because counsel performed deficiently—but because the United States simply did not tender a plea agreement to him. And, as the United States emphasizes (Civ. Doc. 3 at 20), if Moore wished to avoid trial, he could have pleaded guilty at any time before the verdict. Moore's claim that he would have pleaded guilty is simply unsupported by anything in the record besides his conclusory, after-the-fact claim. *See Pierce v. United States*, No. 21-12209-G, 2022 WL 2373362, at *1 (11th Cir. May 5, 2022) (affirming that the petitioner failed to establish that he would have accepted a plea offer because he asserted only that there was a "reasonable probability" that he "probably" would have pleaded guilty); *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.").

Finally, in Ground Four, Moore claims, in one sentence and without any details or elaboration, that he "never got to review his trial and sentencing transcripts to properly prepare for this case." (Civ. Doc. 1 at 8) To the extent Moore claims that he lacked access to transcripts of his trial and sentencing,

12

such claim is not cognizable in this action. "Unless the claimed error involves a lack of jurisdiction or a constitutional violation, § 2255 relief is limited." *Ayuso v. United States*, 361 F. App'x 988, 991 (11th Cir. 2010) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). "An error that is not jurisdictional or constitutional will form the basis for § 2255 relief only where 'the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.'" *Ayuso*, 361 F. App'x at 991 (quoting *Addonizio*, 442 U.S. at 185). A non-constitutional error that results in a miscarriage of justice "should present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428 (1962). Moore's vague claim that he lacked access to transcripts is not a constitutional error and does not rise to the level of a miscarriage of justice.

**D.   Moore's Reply**

In his reply, Moore expresses a variety of complaints about counsel's performance that are absent from his § 2255 motion. He complains that (1) counsel neglected to argue that "[t]here is no business deals saying that [he] sold guns or picked them up across state lines" (Civ. Doc. 8 at 2); (2) counsel neglected to challenge the United States' decision not to indict Kevin Ross despite Ross's admission to owning the storage unit (*id*. at 3); (3) counsel neglected to argue that "the manager of the storage unit made multiple

13

inconsistent statements" (*id.* at 3); (4) counsel wrongfully advised him to stipulate that he knew the firearms crossed state lines and effected interstate commerce (*id.* at 5); and (5) counsel failed to object to unidentified sentencing enhancements and criminal history points (*id.* at 7–8).

Although a district court is required to resolve every claim properly presented in a § 2255 motion, *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992), the district court is not required to address a claim that a party fails to raise until the reply. *See United States v. Howard*, 28 F.4th 180, 201, n. 6 (11th Cir. 2022) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotations and alterations omitted).

In his § 2255 motion, Moore claims counsel was ineffective for not obtaining a plea agreement. It is not until his reply that Moore expresses these additional complaints about counsel's performance. Because he waited until his reply to advance these additional complaints, they are not properly before the district court, and the district court shall not consider them. *See Wilson v. United States*, No. 16-15133, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017) (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[T]his claim was not properly raised until [the] reply brief and, therefore, was not properly before the district court.")); *see also Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (affirming the district court's refusal to consider new arguments raised in a reply brief because petitioner "was barred

from raising new claims"); *Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although *pro se* pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a *pro se* litigant in his initial brief are deemed waived[,] . . . [and] we do not address arguments raised for the first time in a *pro se* litigant's reply brief."); *Snyder v. United States*, 263 F. App'x 778, 780 (11th Cir. 2008) (affirming the district court's ruling that a *pro se* petitioner's reply brief could not be construed as an amendment to add an additional claim to the motion to vacate).

### III. Conclusion

Moore's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED**. The clerk is directed to enter a judgment against Moore, terminate any pending motions, close this case, and enter a copy of this order in the criminal case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Moore is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Moore must show that

reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Moore is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Moore must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of September, 2025.

**TOM BARBER**
**U.S. DISTRICT JUDGE**